1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG CORPORATION, et al., | Case No.: 16-CV-1162 JLS (NLS) |
| Plaintiffs, | **AMENDED ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| HUANG XIAOWEN DBA TOP-UUSHOP, et al., | (ECF No. 111) |
| Defendants. | |

Presently before the Court is Plaintiffs LG Corporation, LG Electronics, Inc., and LG Electronics MobileComm U.S.A., Inc.'s (collectively, "Plaintiffs" or "LG") Motion for Default Judgment ("Mot.," ECF No. 111), against each of the following Defendants ("Defaulting Defendants"):

- Huang Xiaowen *doing business as* top-uushop ("Xiaowen");
- Enjoy International Trading (HongKong) Co., Ltd. ("Enjoy");
- Guangzhou City Hosphone Electronic Co., Ltd. ("Hosphone Electronic");
- Shenzhen Bingos Trading Co. Ltd. ("Shenzhen Bingos");
- Guangzhou Winding Electronic Technology Co. Ltd. ("Winding Electronic");
- Guangzhou Newkingser Electronic Technology Co. Ltd. ("Newkingser");
- Shenzhen Little Link Communication Firm ("Little Link");

- Shenzhen King Flash Electronics Co. Ltd. ("King Flash");

- Shenzhen Smart Link Communications Co. Ltd. ("Smart Link");

- Ruilin Tech Limited Company ("Ruilin Tech");

- Herman Wheeler, Inc. ("Herman Wheeler");

- Zexiao Lu *doing business as* everydaysmile2015 ("Lu");

- Yoon Hee Park *doing business as* Deals-Wow ("Park");

- Shenzhen ZL Times Technology Co. ("Shenzhen ZL");

- Shenzhen Powerfire Technology Co. Ltd. ("Shenzhen Powerfire");

- Shenzhen Newsinte Electronics Co. Ltd. ("Shenzhen Newsinte");

- Shenzhen Leisen Technology Co., Ltd. ("Shenzhen Leisen").

(Mot. 11–12, ECF No. 111-1.[1])

Because the Clerk of Court entered default against the Defaulting Defendants on December 2, 2016, (ECF No. 108), and because on balance the *Eitel* factors guiding the exercise of the Court's discretion in entering default judgment counsel in favor of the Court granting default judgment, the Court **GRANTS** Plaintiffs' Motion for Default Judgment (ECF No. 111).

## BACKGROUND

LG is the owner of various registered Federal Trademarks. (*See* Compl. ¶ 34, ECF No. 1.) The following LG marks are at issue in this case:

| Mark | Relevant Goods/Services | Reg. No. | Reg. Date | Owner |
|---|---|---|---|---|
|  LG | Earphone for Mobile Phone | 3661175 | 07/28/2009 | LG Corp. |

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

| Mark | Relevant Goods/Services | Reg. No. | Reg. Date | Owner |
|------|------------------------|----------|-----------|-------|
| HBS | Headphones; Wireless Headphones | 4894207 | 02/02/2016 | LG Electronics, Inc. |
| HBS-730 | Headphones; Earphones; Wireless Headphones | 4894209 | 02/02/2016 | LG Electronics, Inc. |
| HBS-740 | Headphones; Wireless Headphones | 4894212 | 02/02/2016 | LG Electronics, Inc. |
| HBS-750 | Headphones; Wireless Headphones | 4894211 | 02/02/2016 | LG Electronics, Inc. |
| HBS-760 | Headphones; Wireless Headphones | 4894210 | 02/02/2016 | LG Electronics, Inc. |
| HBS-800 | Headphones; Wireless Headphones | 4894206 | 02/02/2016 | LG Electronics, Inc. |
| HBS-900 | Headphones; Wireless Headphones | 4894208 | 02/02/2016 | LG Electronics, Inc. |

3

| Mark | Relevant Goods/Services | Reg. No. | Reg. Date | Owner |
|---|---|---|---|---|
| TONE | Earphones; Head Phones | 4694125 | 03/03/2015 | LG Electronics, Inc. |
| TONE ULTRA | Headphones | 4925092 | 03/29/2016 | LG Electronics, Inc. |
| TONE+ | Headphones; Earphones | 4820986 | 9/29/2015 | LG Electronics, Inc. |
| TONE PRO | Head Sets; Earphones | 4734180 | 5/12/2015 | LG Electronics, Inc. |
| TONE INFINIM | Wireless Cellular Phone Headsets; Earphones | 4780031 | 7/28/2015 | LG Electronics, Inc. |
| NECKBEHIND | Headphones; Earphones; Headsets for Mobile Phones | 4630809 | 11/4/2014 | LG Electronics, Inc. |

| Mark | Relevant Goods/Services | Reg. No. | Reg. Date | Owner |
|------|------------------------|----------|-----------|-------|
| TONE&TALK | Software For Wireless Communication Between Mobile Phone And Earphones | 4900181 | 2/16/2016 | LG Electronics, Inc. |

(Compl. ¶ 34, ECF No. 1 (collectively, the "LG Trademarks").)

Defaulting Defendants are various individuals and companies located in the United States and in China. (*Id.* ¶¶ 6–30.) Plaintiffs filed suit against Defaulting Defendants, among other defendants, on May 16, 2016. (ECF No. 1.) The Complaint alleges several causes of action, including trademark counterfeiting and infringement, false advertising, and cybersquatting. (*See generally id.*) On December 2, 2016, the Clerk entered default against the Defaulting Defendants. (ECF No. 108.) Plaintiffs filed the instant motion for default judgment on December 13, 2016. (ECF No. 111.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon party application. "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). The Ninth Circuit has set out seven factors,

known as the *Eitel* factors, a court may consider when exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

When weighing these factors, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6). To prove damages, a plaintiff may submit declarations or the Court may hold an evidentiary hearing. *See Affinity Grp., Inc. v. Balser Wealth Mgmt., LLC*, No. 05CV1555 WQH (LSP), 2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007); *Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) ("In assessing damages, the court must review facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled upon judgment by default.").

## ANALYSIS

## I.   Jurisdiction

Before turning to the merits, the Court must assess whether it has jurisdiction to enter default judgment against the Defaulting Defendants. The Court indisputably has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, since the core of Plaintiffs' claims arise under federal law. (*See* Compl. ¶ 31, ECF No. 1 ("This action arises under the federal Trademark Act, 15 U.S.C. §§ 1051, *et seq.*, and under the related laws of California.").)

The Court must also have personal jurisdiction over each of the Defaulting Defendants, or else entry of default judgment is void. *See Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-CV-02525-BLF, 2014 WL 5773197, at *3 (N.D. Cal. Nov. 5, 2014) (citing *Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973)). Here, the

Court finds that it has personal jurisdiction over each of the Defaulting Defendants.

### A. Service of Process

A court has personal jurisdiction over a defendant who has been served in accordance with Federal Rule of Civil Procedure 4. *See Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Pursuant to the Federal Rules of Civil Procedure, an individual or corporation "may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3), (g). Service under Rule 4(f)(3) must be directed by the court, not prohibited by international agreement, and comport with constitutional notions of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–16 (9th Cir. 2002). It is within the court's discretion "to craft alternate means of service." *Id.* at 1016.

The Court previously granted Plaintiffs' *Ex Parte* Application for electronic service, finding that such a method did not run afoul of the Hague Convention. (*See* ECF No. 6, at 4.) Thus, the Court directed Plaintiffs to electronically serve Defaulting Defendants using the email addresses that Plaintiffs' agents used to communicate with and/or purchase certain counterfeit products or had determined were associated with the unknown and foreign Defaulting Defendants. (*Id.* at 9.) The email message was to include, among other things, a link to a secure website where each Defaulting Defendant could download PDF copies of the Summons and Complaint. (*Id.*) Plaintiffs complied with the Court-ordered service procedures. Specifically, throughout May and June 2016, Plaintiffs electronically served several of the Defaulting Defendants, which included substantial efforts to send, re-send, follow-up, and track delivery of their e-mail messages to certain unknown and foreign Defaulting Defendants. (Mot. 21–22, ECF No. 111-1 (collecting citations).) Plaintiffs additionally sent the Complaint and summons via courier to some of the unknown and foreign Defaulting Defendants where Plaintiffs believed it reasonably likely to provide

notice, and delivery was confirmed for each of these Defendants. (*Id.* at 22.) Furthermore, Plaintiffs served Defendants Herman Wheeler and Park via process server because they were not subject to the Court's electronic service order. (*Id.* at 23.) Accordingly, the Court finds that Plaintiffs have fully complied with the Court's electronic service order and the requirements of Rule 4.

### B. Due Process

Personal jurisdiction must also comport with due process. *Bittorrent, Inc.*, 2014 WL 5773197, at *4. Absent an applicable federal statutory basis for jurisdiction, a federal court must apply the personal jurisdiction laws of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because "California's long-arm jurisdictional statute is coextensive with federal due process requirements," a court has personal jurisdiction so long as defendants have "sufficient minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Bittorrent, Inc.*, 2014 WL 5773197, at *4 (internal quotation marks and citation omitted).

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of establishing the first two prongs. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff does so, the burden shifts to the defendant to argue that exercise of jurisdiction would be unreasonable. *Id.*

*1. Purposeful Direction*

A defendant purposefully directs its activities toward the forum state by "(1) commit[ing] an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Lindora, LLC v. Isagenix Int'l, LLC*, No. 15-CV-2754-BAS-RBB, 2016 WL 4077712, at *5 (S.D. Cal. Aug. 1, 2016) (*quoting CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011)).

Plaintiffs' Complaint establishes that each of Defaulting Defendants "targeted and solicited sales from California residents by operating online stores that offer shipping to California," (Compl. ¶ 32, ECF No. 1), "sold counterfeit LG wireless headsets to residents of California," (*id.*), are "infringing one or more of the LG Trademarks in this District," (*id.*), and "use[d] slavish copies of the federally registered LG Trademarks," (*id.* ¶ 124), to sell counterfeit LG products through online stores on eBay.com, Alibaba.com, wish.com, and self-hosted sites like www.lgtonewholesale.com, (*id.* ¶¶ 49, 52, 56, 59, 62, 65, 68, 71, 77, 80, 83, 86, 94, 97, 103, 106, 112). Furthermore, Plaintiffs allege that these counterfeit sales "are likely to mislead consumers into believing that Defendants' products are genuine LG products" and "have damaged and irreparably injured . . . the public's interest in being free from confusion and deception." (*Id.* ¶¶ 32, 118, 122.) Additionally, Plaintiff LG Electronics MobileComm U.S.A., Inc. has its principal place of business in San Diego, CA, and "a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix Photo, Inc.*, 647 F.3d at 1231. Accordingly, the Court finds that Defaulting Defendants directly targeted California in conducting their illegal activities. *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL FFMX, 2014 WL 4679001, at *4 (C.D. Cal. Sept. 18, 2014) (finding personal jurisdiction for default judgment because "Plaintiff has alleged facts, deemed admitted by Defendants' default . . . that Defendants sell and ship infringing products to California residents through Defendants' website, ozwearuggs.com.au, and that such infringing products are the subject of Plaintiff's claims and injuries in this Action")

(citations omitted).

### 2. Relatedness

"The Ninth Circuit adopted the 'but for' test to determine the 'arising out of' requirement. . . . The Ninth Circuit has recognized that, in trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Fighter's Mkt., Inc. v. Champion Courage LLC*, No. 3:16-cv-1271-GPC (BGS), 2016 WL 4879437, at *7 (citing *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990), and *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015)).

Here, Plaintiffs' claims arise out of Defaulting Defendants' advertising and sale of counterfeit goods bearing Plaintiffs' trademarks. Accordingly, the Court finds that Defaulting Defendants' infringing actions are related to Plaintiffs' claims.

### 3. Fair Play and Substantial Justice

Plaintiffs have met their burden on the first two prongs. Defaulting Defendants have not responded to any of Plaintiffs' allegations, much less their arguments here. And the Court cannot discern how its exercise of jurisdiction over Defaulting Defendants would be unfair or unjust.

Accordingly, the Court finds that it has personal jurisdiction over Defaulting Defendants.

## II.   Entry of Default Judgment

Plaintiffs move the Court for entry of default judgment and have adequately noticed the Defaulting Defendants, to the extent possible. (ECF No. 111-15.) Accordingly, Rule 55's requirements have been met and the Court must turn to the *Eitel* factors to govern its discretion in this matter.

### A. Factor I—Prejudice to Plaintiff

The first factor weighs in favor of entering default judgment. Plaintiffs state several valid causes of action against the Defaulting Defendants, and Defaulting Defendants have failed to appear or otherwise participate in this action. (Mot. 34, ECF No. 111-1.) Thus,

LG has suffered and continues to suffer injury from the Defaulting Defendants' illicit use of LG's marks, and LG lacks any other recourse to recover damages in absence of any answer from the Defaulting Defendants. This constitutes prejudice. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."); *see also Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012).

### B. Factors II and III—Claim Merits and Sufficiency of Complaint

To warrant entering a default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A default concedes the truth of the allegations in the complaint, except those relating to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) (noting that "[i]n assessing liability, the complaint's allegations are taken as true" because "a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact").

At issue in the present case are claims for (1) trademark counterfeiting under 15 U.S.C. §§ 114(1)(b), 116(d); (2) trademark infringement under Federal and California law, as well as related California unfair competition law; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); (4) trademark dilution under 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14245 *et seq*.; and (5) cybersquatting under 15 U.S.C. § 1125(d).

#### 1. Trademark Counterfeiting

To state a valid cause of action for trademark counterfeiting under the Lanham Act, a plaintiff must show that its mark is valid and has been infringed. 15 U.S.C. § 1114(1).

Registration of a mark on the principal register is "prima facie evidence . . . of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . ." 15 U.S.C. § 1115(a). The Lanham Act prohibits use of "counterfeit" marks in connection with the "sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(A). A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §§ 1116(d)(1)(B), 1127.

As discussed, LG has valid trademark registrations for several marks, including in connection with the sale of earphones, headphones, and headsets. (Compl. ¶ 34, ECF No. 1.) Furthermore, each of the Defaulting Defendants have used and continue to use counterfeit/identical versions of LG's registered trademarks in connection with the sale of their own, non-LG wireless headsets. (Mot. 25, ECF No. 111-1 (providing table summarizing the allegations against each Defaulting Defendant with respect to the counterfeit marks used).) Thus, the Court finds that Plaintiffs have set forth a valid claim for trademark counterfeiting.

### 2. Trademark Infringement & Unfair Competition[2]

To state a valid cause of action for trademark infringement under the Lanham Act, a plaintiff "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)). In the present case, Plaintiffs have shown a protectable interest in the marks at issue, (Compl. ¶ 34, ECF No. 1 (setting forth trademark registration numbers)), and therefore the Court's inquiry focuses solely on likelihood of confusion.

/ / /

---

[2] Counts 2, 3, 6, and 8: Trademark Infringement, 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A); Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; Common-Law Trademark Infringement and Unfair Competition.

In analyzing whether there is a likelihood of confusion between the two marks at issue courts consider eight factors, known as the *Sleekcraft* factors.[3] *Rearden*, 683 F.3d at 1209. These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). However, these eight factors are not exhaustive and "other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Id.* Additionally, "[w]hen the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *See Sleekcraft*, 599 F.2d at 348. Furthermore, the counterfeiting of another's trademark establishes a presumption of a likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) ("[T]he presumption [of likelihood of confusion] arises when intent to cause confusion is coupled with the use of a counterfeit mark or a mark virtually identical to a previously registered mark.").

---

[3] The test for infringement and unfair competition under 15 U.S.C. § 43(a) is the same as for trademark infringement under Section 32(a). *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 nn.6 & 8 (9th Cir. 1999). Trademark infringement and unfair competition claims under California law are "substantially congruent" with federal trademark infringement and unfair competition claims, and are thus subject to the same analysis. *See Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) (quoting *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 n.10 (9th Cir. 2004)); *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1071 (C.D. Cal. 2000) (finding that because the plaintiff adequately plead a claim for trademark infringement, it also adequately plead a claim for unfair competition under Section 17200).

Regarding factor one, Plaintiffs have valid trademark registrations for several marks, including for use in conjunction with earphones, headphones, and headsets. (Compl. ¶ 34, ECF No. 1; Mot. 29, ECF No. 111-1.) Additionally, some of Plaintiffs' marks (e.g., "LG" and its corresponding logo) appear to have no relation to the products on which they are attached (e.g., wireless headsets) nor any independent meaning. Thus, these marks are probably "fanciful" marks, "which are words or phrases invented solely to function as trademarks, [and thus] receive a high level of trademark protection because they are inherently distinctive." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013). These marks are stronger than other of Plaintiffs' marks, such as their NECKBEHIND and TONE&TALK marks, which appear to be more descriptive of the products and are weaker marks as a result. *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130–31 (9th Cir. 1998) (discussing the difference in strength between fanciful and descriptive/suggestive marks). Accordingly, some of Plaintiffs' marks are stronger than others.

Regarding factors two and three, Defaulting Defendants use the LG Trademarks in connection with the advertising, offering for sale, and sale of counterfeit LG wireless headset products in the United States and California over the Internet. All of the Defaulting Defendants use the LG Trademarks in their entirety. Additionally, some of the Defaulting Defendants incorporate the LG word mark into the URLs of their sites. (*See* Compl. ¶¶ 45–47, ECF No. 1.) Because both Plaintiffs and Defaulting Defendants' goods are similar (e.g., headsets), and because Defaulting Defendants use Plaintiffs' exact marks on both their infringing products and websites, both of these factors favor likelihood of confusion.

Regarding factor four, although Plaintiff has not shown any specific evidence of actual confusion, failing "to prove instances of actual confusion is not dispositive against a trademark plaintiff" because "difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014). Nonetheless, in the instant case this factor weighs slightly against Plaintiffs.

The remaining four factors favor Plaintiffs. Both Plaintiffs and Defaulting Defendants market their goods via website, and the type of goods are those that could be purchased and easily confused by a reasonable consumer searching for an LG headset. This is especially true here because all of Defaulting Defendants' websites are sophisticated in appearance, and some even use the LG marks in the domain name, making it more likely that consumers will be confused into thinking they are actually purchasing from LG. (Compl. ¶¶ 46–47, ECF No. 1.) Additionally, because default was entered against Defaulting Defendants, Plaintiffs' allegations that Defaulting Defendants were wilful infringers of Plaintiffs' marks is taken as true.

On balance, weighing the *Sleekcraft* factors strongly favors a finding of likelihood of confusion. Taken in concert with Defaulting Defendants' continued failure to respond to the claims at issue, the Court finds that Plaintiffs have set forth a valid claim for likelihood of confusion.

### 3. False Advertising[4]

The Lanham Act prohibits "[a]ny person . . . in commercial advertising or promotion" from misrepresenting "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B). To state a valid cause of action under the Lanham Act for false advertising, a plaintiff must provide "a showing that . . . the defendant made a false statement either about the plaintiff's or its own product . . . ." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010) (quoting *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008)). A statement is proven to be false either by showing (1) that the statement is literally false, or (2) that the statement is literally true but likely to mislead or confuse customers. *Mutual Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139–40 (9th Cir. 1997)). A violation may be established without evidence of consumer confusion

---

[4] Count 4: False Advertising, 15 U.S.C. § 1125(a)(1)(B).

if the statement is literally false. *Id.* at 933 (citation omitted).

The allegations in the Complaint demonstrate that each of Defaulting Defendants used LG's marks to falsely identify their products as genuine "LG," "Tone," and/or "HBS" products. (Mot. 30–32, ECF No. 111-1 (providing table summarizing the allegations against each Defaulting Defendant with respect to the false marks used).) Because the use of LG's marks in this case is literally false, no evidence of consumer confusion is necessary and default judgment is appropriate. *iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, No. C-11-0592 CW, 2011 WL 6291793, at *15 (N.D. Cal. Oct. 25, 2011), *report and recommendation adopted*, 2011 WL 6260364 (N.D. Cal. Dec. 15, 2011) (granting default judgment on Section 43(a)(1)(B) claim because plaintiff alleged defendants made literally false statements in the course of advertising their services). Accordingly, the Court finds that Plaintiffs have stated a valid claim for false advertising.

### 4. Trademark Dilution[5]

In order to state a valid claim for trademark dilution, "a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974, 980–81 (9th Cir. 2007), *opinion amended and superseded on other grounds by*, 518 F.3d 628 (9th Cir. 2008). The analysis for dilution under federal and California state law is the same. *Id.*

Plaintiffs bring a dilution claim only for their LG logo mark (Reg. No. 3661175). (Compl. ¶ 146, ECF No. 1.) The Complaint establishes that (1) LG's logo is and was famous, through its national registration and extensive nationwide use and recognition, (*id.*

/ / /

---

[5] Counts 5 and 7: Trademark Dilution, 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14245 *et seq.*

¶ 146); the relevant Defaulting Defendants ("Diluting Defendants")[6] are using the mark in commerce, (*id.* ¶ 147); (3) Diluting Defendants' use of the mark occurred after the mark became famous, (*id.* ¶ 146); and (4) Diluting Defendants' use of the mark dilutes the distinctiveness of LG's mark by diminishing the capacity of consumers to identify genuine LG products, (*id.* ¶¶ 145–50). Accordingly, the Court finds that Plaintiffs have stated a valid claim for dilution against the Diluting Defendants.

### 5. Cybersquatting[7]

To state a valid cybersquatting claim under the Lanham Act, a Plaintiff must show that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *Rearden*, 683 F.3d at 1219 (quoting *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010)).

Again, taking Plaintiffs' allegations as true given the entry of default, it is clear that (1) Defendant Shenzhen ZL has a bad-faith intent to profit from its use of two of LG's marks; (2) Shenzhen ZL registered and/or uses the lgtonewhoesale.com domain name to sell counterfeit mobile headsets; (3) the two LG marks were distinctive at the time the lgtonewholesale.com domain name was registered; and (4) the lgtonewhoesale.com domain name is confusingly similar to LG's two marks at issue. (Mot. 33, ECF No. 111-1; Compl. ¶¶ 167–75.) Because each element required for a finding of cybersquatting is met, the Court finds that Plaintiffs have set forth a valid claim for cybersquatting against Defendant Shenzhen ZL.

Accordingly, because the complaint is legally sufficient and each of Plaintiffs' claims has merit, this factor weighs in favor of entering default judgment.

/ / /

---

[6] Mot. 32, ECF No. 111-1 (accusing Xiaowen, Enjoy, Hosphone Electronic, Shenzhen, Bingos, Shenzhen ZL, Winding Electronic, Shenzhen Powerfire, Newkingser, Little Link, Shenzhen Newsinte, Ruilin Tech, Shenzhen Leisen, Herman Wheeler, and Lu of trademark dilution).

[7] Count Nine: Cybersquatting, 15 U.S.C. § 1125(d).

### C. Factor IV—Sum of Money at Stake

This factor turns on whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, Plaintiffs' damages sought all are within the Lanham Act's provisions for violations of the magnitude at issue in this case. Specifically, Plaintiffs seek permanent injunctive relief, statutory damages of $2 million per Defaulting Defendant per mark used, $100,000 per domain name, as well as attorneys' fees and costs. (Mot. 33–34, ECF No. 111-1.) While substantial, the amount of money, by itself, is not necessarily unreasonable. *See Deckers Outdoor Corp.*, 2014 WL 4679001, at *10. Rather, the court must balance "the amount of money at stake in relation to the seriousness of the defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (internal quotation marks, alterations, and citations omitted). Here, Plaintiffs accuse Defaulting Defendants of using LG's various marks in hopes of deceiving customers into buying their counterfeit products. Given the gravity of this harm, the need to protect Plaintiffs' marks, consumers, and deter further counterfeiting, and the fact that Plaintiffs seek statutory (and thus discretionary) damages, *see Deckers Outdoor Corp.*, 2014 WL 4679001, at *10, the Court finds that this factor does not weigh against default judgment.

### D. Factor V—Possibility of Factual Dispute

This factor turns on the degree of possibility that a dispute concerning material facts exists or may later arise. *Eitel*, 782 F.2d at 1471–72. In the present case, Plaintiffs' allegations must be taken as true due to the default. And Defaulting Defendants have been unresponsive since the start of this case. Accordingly, this factor favors Plaintiffs—any purported factual dispute appears settled and there is no indication Defaulting Defendants will further defend against the action.

### E. Factor VI—Reason for Default

This factor turns on whether a Defaulting Defendant's default may have been the product of excusable neglect. *Eitel*, 782 F.2d at 1471–72. There is no evidence of excusable neglect here.  Plaintiffs note that at some point their counsel spoke with one of the

Defaulting Defendants (Park) and counsel for another (Xiaowen) about this action. (Mot. 34, ECF No. 111-1.) But there has been no further response from either of these defendants or the remainder of Defaulting Defendants. (*Id.*) Furthermore, this factor favors default judgment where, as here, Defaulting Defendants have been properly served or Plaintiffs have demonstrated that Defaulting Defendants are aware of the lawsuit. *Landstar Ranger,* 725 F. Supp. 2d at 922. As discussed above, Plaintiffs have properly served Defaulting Defendants pursuant to the Court's electronic service order. Additionally, Plaintiffs note they have confirmation that their service emails were delivered to the Defaulting Defendants' email addresses and that some of them downloaded the documents served. (*Id.*) Accordingly, this factor favors granting a default judgment.

### F. Factor VII—Policy Favoring Merits Decisions

Although this factor, by its nature, favors defendants because it encourages merits decisions, "[t]he fact that Rule 55(b) has been enacted . . . indicates that 'this preference, standing alone, is not dispositive.'" *Landstar Ranger*, 725 F. Supp. 2d at 922 (citing *Pepsico*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. 94-2684, 1996 WL 75314, at *3 (N.D. Cal. 1996))). Further, in the present case there is no indication that a merits decision is practicable; Defaulting Defendants have yet to answer Plaintiffs' complaint and thus defend this action. Thus, here the timely administration of justice outweighs the strong policy for merits decisions.

On balance, weighing the *Eitel* factors reveals that a default judgment is appropriate in this case. Accordingly, the Court **GRANTS** Plaintiffs' motion for default judgment.

## III.    Assessment of Damages

### A. Trademark Counterfeiting

Given Defaulting Defendants' failure to participate in the case, Plaintiffs seek statutory damages as their sole monetary remedy for counterfeiting under 15 U.S.C. § 1117(c). Section 1117(c) authorizes statutory damages in the amount of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the

use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). In order to invoke the civil monetary remedies under § 1117, a plaintiff "must establish that (1) [the defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (citations omitted).

As discussed above, *supra* Section II.B.2, Defaulting Defendants intentionally used counterfeit marks in commerce in connection with their offering for sale and sales of mobile phone headsets, which was likely to confuse or deceive consumers. (Mot. 36, ECF No. 111-1 (citing Compl. ¶¶ 123–25, 136).) Thus, the Court finds that Plaintiffs are entitled to statutory damages under Section 1117(c), and more specifically to the damages for willful counterfeiting under Section 117(c)(2). Nevertheless, the Court is explicitly granted wide latitude under the Lanham Act to use its discretion in determining a just damages award. And while Plaintiffs seek the $2,000,000 maximum per counterfeit mark per type of good or service offered, totaling $168,000,000 broken down per Defaulting Defendant in their accompanying Proposed Judgment (Mot. 38, ECF No. 111-1), Plaintiffs' citations to Ninth Circuit authority is a mixed bag of some granting the $2,000,000 maximum amount, and some not. *Compare, e.g.*, *Deckers Outdoor Corp.*, 2014 WL 4679001, at *12 (granting default judgment and awarding $2 million in statutory damages for defendants' counterfeit use of UGG mark), *with, e.g.*, *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (awarding $1 million per counterfeit use of two marks, for a total of $2 million in statutory damages). But given the strength and recognition of the LG brand in electronics, and the wilful actions of the large number of Defaulting Defendants, which demonstrates the serious counterfeiting problem LG faces, the Court finds that granting Plaintiffs' the statutory maximum is appropriate. Accordingly, the Court **GRANTS** Plaintiffs' request of $168,000,000 broken down per Defaulting

Defendant as explained at the conclusion of this Order.

### B. Cybersquatting Statutory Damages

When a violation is found under 15 U.S.C. § 1125(d), "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." § 1117(d). To determine a reasonable amount of statutory damages for cybersquatting, "courts generally consider a number of factors . . . , including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a 'serial' cybersquatter . . . and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012) (internal quotation marks and citation omitted). As above, Plaintiffs elect for an award of statutory damages for this claim because of Defendant Shenzhen ZL's lack of participation in this case. (*See* Mot. 38, ECF No. 111-1; Compl. ¶ G, at 54, ECF No. 1.) Thus, the Court must consider what would constitute a just damage award.[8]

Plaintiffs argue they are entitled to the statutory maximum of $100,000 for Defendant Shenzhen ZL's infringing domain name "lgtonewholesale.com." (Mot. 38–39, ECF No. 111-1.) In support of their request, Plaintiffs cite *eAdGear, Inc. v. Liu*, where the court granted the statutory maximum against a defendant who used the plaintiff's trademarks in its domain name in order to compete with the plaintiff by confusing its

---

[8] Unsurprisingly, courts vary widely in assessing what constitutes a just damage award for cybersquatting. For a sampling, see, e.g., *Partners for Health & Home, L.P. v. Yang*, 488 B.R. 109 (C.D. Cal. 2012) (awarding $25,000 for domain through which the defendant had sold products willfully infringing on plaintiff's trademarks); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1085–87 (C.D. Cal. 2012) (awarding $50,000 where the defendant had provided false contact information to the domain registrar but no other factors were present); *Verizon Cal. Inc. v. Onlinenic, Inc.*, C 08–2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) (awarding $50,000 per violation where all four factors are present); *Citigroup, Inc. v. Shui*, 611 F. Supp. 2d 507, 513 (E.D. Va. 2009) (awarding $100,000 where defendant's use of the domain was "sufficiently willful, deliberate, and performed in bad faith").

potential customers. No. CV-11-05398 JCS, 2012 WL 2367805, at *19 (N.D. Cal. June 21, 2012), *report and recommendation adopted*, No. C-11-05398 RMW JCS, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012). Here, there is an even stronger case for imposition of the statutory maximum, since Shenzhen ZL's domain name not only contains two LG marks, and thus may already confuse consumers, but also contains the term "wholesale," which may further confuse consumers into thinking that they can purchase LG-authorized products at a lower price, thus seriously harming consumers and Plaintiffs alike. Accordingly, the Court **GRANTS** Plaintiffs' request for the statutory maximum and assesses a total of $100,000 against Defendant Shenzhen ZL for violating 15 U.S.C. § 1125(d).

### C. Permanent Injunction

The Lanham Act "vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116). A party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (citations omitted). Although irreparable harm was once presumed in meritorious trademark infringement actions, irreparable harm now "must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248–49 (9th Cir. 2013) (emphasis added) (recounting via caselaw prior presumption and subsequent Supreme Court and Ninth Circuit developments).

Plaintiffs demonstrate that a permanent injunction is appropriate. As to irreparable injury, Plaintiffs argue that Defaulting Defendants' continuing sales of counterfeit and

infringing products will cause Plaintiffs lost profits and customers, as well as damage to goodwill and business reputation. (Mot. 40, ECF No. 111-1 (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (holding that "evidence of threatened loss of prospective customers or goodwill certainly supports a finding of" irreparable harm)).) Here, Plaintiffs provide evidence that LG spends millions of dollars promoting its trademarks, building and maintaining its reputation among customers as a premium consumer electronics brand, and uses distribution agreements to control the sales of its mobile headsets. (*Id.*) Thus, Defaulting Defendants' continuing illegal activities undermines LG's investment in its brands and its customer and distributor relationships, which constitutes irreparable harm. (*Id.* (collecting cases).) Accordingly, the Court finds that this constitutes irreparable harm and that this factor weighs in favor of issuing a permanent injunction.

As to inadequate remedies at law, Plaintiffs argue that Defaulting Defendants' failure to respond to Plaintiffs' service attempts or otherwise appear in this action suggests they continue their counterfeiting and infringing activities. (*Id.* at 41 (citing *Herman Miller Inc. v. Alphaville Design Inc.*, No. C 08-03437 WHA, 2009 WL 3429739, at *8 (N.D. Cal. Oct. 22, 2009) (granting permanent injunction on default because "[defendant]'s refusal to answer or appear in this action makes it difficult for plaintiff to prevent further infringement. An injunction would serve to prevent [defendant] from continuing to infringe plaintiff's trademarks")).) Accordingly, the Court finds that Plaintiffs have no adequate remedy at law and that this factor weighs in favor of issuing a permanent injunction.

Third, the balance of hardships weighs decisively in Plaintiffs' favor. As Plaintiffs note, refraining from willful trademark infringement and counterfeiting imposes no hardship on the infringing party. (Mot. 41, ECF No. 111-1 (citing *Ozwear Connection Pty Ltd.*, 2014 WL 4679001, at *13 ("There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law.")).) Defaulting Defendants can simply sell their own products without using LG's marks. Plaintiffs, on the other hand, will continue to suffer the irreparable harm detailed above. Accordingly, the

Court finds that the balance of hardships tips in Plaintiffs' favor and that this factor weighs in favor of issuing a permanent injunction.

Fourth and finally, issuing a permanent injunction would serve the public interest. As Plaintiffs argue, such an order would prevent consumer confusion and protect their property interests in their various trademarks. (Mot. 42, ECF No. 111-1 (citing *Herman Miller Inc.*, 2009 WL 3429739, at *8 (noting that a permanent injunction against sale of counterfeit goods serves the public interest by "resolv[ing] the on-going public confusion regarding [the counterfeit goods]")).) And there is no discernable public interest served by allowing Defaulting Defendants to continue their counterfeit and infringing sales. Accordingly, the Court finds that the public interest is served by granting a permanent injunction and that this factor weighs in favor of issuing a permanent injunction.

All four factors weigh in favor of granting a permanent injunction. Accordingly, the Court **GRANTS** Plaintiffs' request for a permanent injunction.

### D. Post-Judgment Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest is calculated pursuant to the statutory rate at the date of entry of the judgment. *Id.* Plaintiffs simply assert that they are entitled to this interest without argument. (Mot. 42, ECF No. 111-1.) Nevertheless, there appears to be no reason why the Court should not grant this request. Accordingly, the Court **GRANTS** Plaintiffs post-judgment interest.

### E. Attorneys' Fees and Costs

Title 15 U.S.C. § 1117(a) provides that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." For a case to warrant an award of attorney fees under this provision requires a court finding that "the defendant acted maliciously, fraudulently, deliberately, or willfully." *K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1081–82 (9th Cir. 2007) (citing *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005)). This determination is a question of law for the court. *Watec Co.*, 403 F.3d at 656.

/ / /

As discussed above, Plaintiffs' Complaint alleges that Defaulting Defendants willfully infringed LG's marks. (Mot. 43, ECF No. 111-1.) Because Defaulting Defendants have not responded to Plaintiffs' allegations, the Court awards Plaintiffs reasonable attorneys' fees and costs. *Herman Miller Inc.*, 2009 WL 3429739, at *10 (awarding plaintiff attorneys' fees and costs on default judgment in a trademark counterfeiting and infringement case where defendant willfully infringed). Thus, Plaintiffs **SHALL SUBMIT** evidence of their attorneys' fees and costs <u>on or before thirty (30) days from the date on which this Order is electronically docketed.</u>

## CONCLUSION

For the reasons stated above, the Court:

(1) **GRANTS** Plaintiffs' motion for default judgment.

(2) **GRANTS** Plaintiffs' request for a permanent injunction. Defaulting Defendants, and each of their respective employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, alter-egos, and all persons in active concert or participation with any of them are **HEREBY ENJOINED** from:

    a. Using the LG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine LG branded product or not authorized by LG to be sold in connection with the LG Trademarks;

    b. Passing off, inducing, or enabling others to sell or pass off any product as a genuine LG branded product or any other product produced by LG, that are LG's or not produced under the authorization, control or supervision of LG and approved by LG for sale under the LG Trademarks;

    c. Shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for LG, nor authorized by

LG to be sold or offered for sale, and which bear any of the LG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof; and

    d. Representing by any means whatsoever, directly or indirectly, that any Defendant is an authorized reseller of LG products and/or that any defendant or any of its products or activities are associated or connected in any way with LG or sponsored or otherwise affiliated with LG.

(3) **GRANTS** Plaintiffs' request for statutory fees in the amount of $168,100,000 broken down as follows:

| Defendant | Total Number of Marks Used | Total Number of Domain Names Used | Statutory Damages |
|---|---|---|---|
| HUANG XIAOWEN dba TOP-UUSHOP | 9 | | $18,000,000 |
| ENJOY INTERNATIONAL TRADING (HONGKONG) CO., LTD. | 6 | | $12,000,000 |
| GUANGZHOU CITY HOSPHONE ELECTRONIC TECHNOLOGY CO. LTD. | 4 | | $8,000,000 |
| SHENZHEN BINGOS TRADING CO. LTD. | 4 | | $8,000,000 |
| SHENZHEN ZL TIMES TECHNOLOGY CO. | 7 | 1 | $14,100,000 |
| GUANGZHOU WINDING ELECTRONIC TECHNOLOGY CO. LTD. | 7 | | $14,000,000 |
| SHENZHEN POWERFIRE TECHNOLOGY CO. LTD. | 3 | | $6,000,000 |

| Defendant | Total Number of Marks Used | Total Number of Domain Names Used | Statutory Damages |
|---|---|---|---|
| GUANGZHOU NEWKINGSER ELECTRONIC TECHNOLOGY CO. LTD. | 5 | | $10,000,000 |
| SHENZHEN LITTLE LINK COMMUNICATION FIRM | 5 | | $10,000,000 |
| SHENZHEN KING FLASH ELECTRONICS CO. LTD. | 3 | | $6,000,000 |
| SHENZHEN NEWSINTE ELECTRONICS CO. LTD. | 8 | | $16,000,000 |
| SHENZHEN SMART LINK COMMUNICATION CO. LTD. | 1 | | $2,000,000 |
| RUILIN TECH LIMITED COMPANY | 6 | | $12,000,000 |
| HERMAN WHEELER, INC. | 7 | | $14,000,000 |
| ZEXIAO LU DBA EVERYDAYSMILE2015 | 4 | | $8,000,000 |
| YOON HEE PARK DBA DEALS-WOW | 2 | | $4,000,000 |
| SHENZHEN LEISEN TECHNOLOGY CO | 3 | | $6,000,000 |
| **Total** | **84** | **1** | **$168,100,000** |

(4) In view of the above, the Court **HEREBY ORDERS** that all monies currently retained in the Defaulting Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal"), are hereby released to LG as partial payment of the above-identified damages, and PayPal is ordered to release to LG the amounts from the Defaulting Defendants' PayPal accounts within ten (10) days of receipt of this Order. Until LG has recovered full payment of monies owed to it by any Defaulting Defendant, LG shall have ongoing authority to serve this Order on

any banks, savings and loan associations, or other financial institutions including, without limitation, PayPal (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by the Defaulting Defendants or those in privity with them are identified. Upon receipt of this Order, the Financial Service Providers shall immediately locate and restrain any newly discovered accounts connected to the Defaulting Defendants or the Defaulting Defendants' websites, and any funds in such accounts shall be transferred to LG within ten (10) days of receipt of this Order.

(5) **GRANTS** Plaintiffs' request for attorneys' fees and costs. Plaintiffs **SHALL SUBMIT** evidence of their attorneys' fees and costs <u>on or before thirty (30) days from the date on which this Order is electronically docketed</u>.

(6) **DIRECTS** Whois Privacy Corporation to reveal to LG the owner of the "lgtonewholesale.com" domain name. Said owner and/or the relevant registrar (Internet Domain Service BS Corp.) is directed to transfer the "lgtonewholesale.com" domain name to LG.

**IT IS SO ORDERED.**

Dated:  February 6, 2017

Hon. Janis L. Sammartino
United States District Judge