WRIGHT, L'ESTRANGE & ERGASTOLO
John H. L'Estrange, Jr. (SBN 049594)
jlestrange@wlelaw.com
Joseph T. Ergastolo (SBN 137807)
jte@wlelaw.com
Andrew E. Schouten (SBN 263684)
aschouten@wlelaw.com
402 West Broadway, Suite 1800
San Diego, CA  92101
(619) 231-4844; Fax: (619) 231-6710

Mark Sommers (*pro hac vice*)
mark.sommers@finnegan.com
Naresh Kilaru (*pro hac vice*)
naresh.kilaru@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Tel.: (202) 408-4000; Fax: (202) 408-4400

Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
Tel.: (650) 849-6600; Fax: (650) 849-6666

Attorneys for Plaintiffs LG Corporation,
LG Electronics Inc., and LG Electronics
MobileComm U.S.A., Inc.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG CORPORATION, et al.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>HUANG XIAOWEN DBA TOP-UUSHOP, et al.,<br><br>                    Defendants. | Case No. 3:16-cv-1162-JLS-NLS<br><br>**DECLARATION OF MARK SOMMERS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>**Date:  May 11, 2017**<br>**Time:  1:30 p.m.**<br>**Dept.:  Courtroom 4A** |

I, Mark Sommers, declare as follows:

1.      I am a partner at Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan") and am counsel for LG Corporation, LG Electronics Inc., and LG Electronics MobileComm U.S.A., Inc. (individually and collectively, "LG"), in this action.  I submit this declaration in response to the Court's Order awarding LG its attorneys' fees and costs (Dkt. 127).  The facts in this declaration are based on my personal knowledge and/or documents regularly and/or contemporaneously created and maintained in the ordinary course of business by Finnegan.  If called upon to do so, I would testify competently to the facts contained in this declaration.

2.      I have been lead counsel for LG since the inception of this case.  I personally oversaw all aspects of the case, including billing.

3.      The billing rates for Finnegan attorneys and summer associates working on this case ranged from $130 to $890, depending on the individual's experience.  I was the only attorney charging $850 to $890 per hour.  I obtained a J.D. from Northern Illinois University College of Law in 1982 and an LL.M. from University of London in 1983, and since such time, have practiced exclusively in the areas of trademarks, counterfeiting, dilution, unfair competition, false advertising, cybersquatting, and related areas of intellectual property for well over three decades.

4.      I was primarily assisted on this case by Naresh Kilaru and Morgan Smith.  Mr. Kilaru graduated from the George Washington University Law School in 2002 and has focused his practice on trademark, unfair competition, copyright, trade secret, and right-of-publicity law for approximately fifteen years.  Mr. Kilaru has broad district court and appellate intellectual property litigation experience.  His work was initially billed at $670 per hour and was increased to $735 per hour once he became a partner at Finnegan in 2016.

5.      Ms. Smith graduated from the University of Southern California Gould School of Law in 2013 and has been practicing with Finnegan since that time.  She

focuses her practice on trademark litigation and handles day-to-day activities on many district court cases.  Her work was billed at $505 per hour.

6.     Mr. Kilaru, Ms. Smith, and I were also assisted by Elizabeth Ferrill, Ningling Wang, Samuel Eichner, Eleanor Atkins, Danielle Bulger, Sydney English, Patrick Rodgers, and Nate Ngerebara.  Ms. Ferrill has been a partner at Finnegan since 2015 and assisted in the early stages of this case with reviewing the investigations of the defendants and drafting the complaint.  Her work was billed at $700 to $735 per hour.

7.     Ms. Wang graduated from the University of Oregon School of Law in 2001 and is the managing partner of Finnegan's Shanghai office.  She and her legal assistant, Lan Liu, assisted in service of case-related documents in China.  Ms. Wang also assisted in strategic advice/planning on this matter.  Her time was billed at $800 per hour.  Ms. Liu's time was billed at $220 per hour.

8.     Mr. Eichner graduated from Cardozo Law School in 2012 and has been a member of the New York and New Jersey bars since 2013.  He joined Finnegan as an associate in 2016.  Ms. Atkins graduated from American University, Washington College of Law in 2014 and has been a member of the Maryland bar since that time. Ms. Atkins was an associate with Finnegan from 2014 to 2016.  Mr. Eichner and Ms. Atkins assisted Ms. Smith with the preparation of LG's motion for default judgment. Mr. Eichner's time was billed at $555 per hour.  Ms. Atkins's time was billed at $460 per hour.

9.     Ms. Bulger graduated from the Georgetown University Law Center in 2015 and joined Finnegan as an associate later that year.  Her work on this matter consisted primarily of legal research relating to LG's motion for a temporary restraining order.  Ms. Bulger's time was billed at $420 per hour.

10.     Ms. English graduated from the George Washington University Law School in 2016 and joined Finnegan as an associate later that year.  Her work on this

matter consisted primarily of legal research relating to LG's motion for default judgment. Ms. English's time was billed at $420 per hour.

11.     Mr. Rodgers and Mr. Ngerebara are current law students at the Georgetown University Law Center and the University of California at Berkeley, Boalt Hall School of Law, respectively. Both were summer associates at Finnegan in 2016 and conducted legal research relating to LG's motion for default judgment. Mr. Rodgers' time was billed at $210 per hour. Mr. Ngerebara's time was billed at $130 per hour.

12.     The billing rate for Finnegan paralegals ranged from $210 to $350, depending on the individual's level of experience and responsibilities. The main paralegal duties for this matter were handled by Bonita Ford, with assistance from Camille Joyner and Bradley Moore. Bonita Ford is a litigation case manager at Finnegan and has been a paralegal for over twenty years. She manages paralegal staff and assists with all aspects of the litigation process, including cite checking, drafting documents, filing documents with the court, and other administrative tasks. Ms. Ford's time was billed at $350 per hour.

13.     Bradley Moore has been a litigation legal assistant at Finnegan for eight years. His responsibilities included maintaining correspondence and pleadings, updating case files, cite checking, drafting documents, and filing documents with the court. Mr. Moore's time was billed at $295 per hour.

14.     Camille Joyner has been a litigation clerk with Finnegan for seventeen years. Her responsibilities included maintaining correspondence and pleadings and updating case files, cite checking, drafting documents, and filing documents with the court. Ms. Joyner's time was billed at $220 per hour.

15.     Gail Selburn, Mary Petite, and Randal Holderfield are litigation legal assistants in Finnegan's Palo Alto office. Mr. Holderfield has been a paralegal since 1989 and has worked at Finnegan for over ten years. Ms. Selburn started as a litigation clerk with Finnegan in 2006 and was promoted to a litigation legal assistant

in 2010.  Ms. Petite has started as a litigation clerk with Finnegan in 2009 and was promoted to a litigation legal assistant in 2012.  They assisted in the preparation and cite checking of LG's motion for a temporary restraining order.  Their time was billed at $295 per hour.

16.    Jan Priefer was a librarian in Finnegan's Palo Alto office from 2010 to 2016.  Takisha Diaz has been an investigator with Finnegan for seventeen years.  Ms. Priefer and Ms. Diaz assisted with various investigative tasks associated with this matter.  Ms. Priefer's time was billed at $260 per hour.  Ms. Diaz's time was billed at $210 to $225 per hour.

17.    Finnegan is an international intellectual property firm repeatedly identified as a leader in the field by in-house counsel and its peers.  Finnegan's recent accolades include:

- Global IP Firm of the Year, *Managing Intellectual Property* Global IP Awards, 2016;

- U.S. Specialty IP Firm of the Year, *Managing Intellectual Property* North American IP Awards, 2016;

- U.S. IP Firm of the Decade, *Managing Intellectual Property* North American IP Awards, 2015;

- Trademark Contentious Firm of the Year in the United States, *Managing Intellectual Property* North American IP Awards, 2013;

- #1 Tier U.S. Law Firm for Trademark Contentious—National, *Managing Intellectual Property's* World IP Surveys, 2008-2016;

- #1 or #2 Tier Law Firm for Trademark Work—United States, *World Trademark Review 1000*, 2011-2017; and

- #1 or #2 Tier Law Firm for Trademark Litigation, *The Legal 500 U.S.*, 2007-2016.

18.    In my experience, the rates charged for Finnegan's attorneys, summer associates, and paralegals are consistent with the prevailing rates of similar law firms

1    that specialize in intellectual property law and constitute reasonable rates for

2    individuals having such specialized skill and experience.  A copy of the Laffey

3    Matrix, attached as Exhibit 1, shows prevailing market rates across all firm types.

4        19.    True and correct copies of the billing statements Finnegan sent to LG

5    relating to its work on this matter are attached as Exhibit 2.  The statements disclose

6    the date, amount, and nature of the work performed by LG's attorneys, summer

7    associates, and paralegals.  Each statement also shows the rate at which each attorney,

8    summer associate, or paralegal billed for the relevant time period.  The following

9    information has been redacted from the billing statements for public filing:  (1) all

10   billing entries relating to fees not claimed in this motion, (2) any language in billing

11   narratives revealing attorney-client or work-product-privileged material, and

12   (3) confidential trade secret information relating to Finnegan's fee agreement with

13   LG.

14       20.    Ms. Smith and I conducted a detailed review and analysis of each of the

15   attached billing statements.  As part of that review, we evaluated which tasks were

16   undertaken solely because of LG's claims against Doe 1, Phuong Nguyen, Lam Le,

17   Bestcom Wireless Network, Inc. and N&K Trading, Inc. (collectively the "Non-

18   Defaulting Defendants"), and excluded these billing entries from LG's calculations.

19   In an abundance of caution, billing entries that encompassed work relating to the

20   Defaulting Defendants (as defined in LG's motion) and the Non-Defaulting

21   Defendants were also excluded.  In addition, all travel and correspondence costs (*e.g.*,

22   telephone and Federal Express) were excluded.  We categorized the remaining billing

23   entries using the following system:

24          a. Category 1:   Entries that relate to Finnegan's work on LG's claims

25              against all defendants, *e.g.*, investigatory and preparatory work for the

26              complaint, work relating to LG's motion for a temporary restraining

27              order, service efforts, etc.  These entries have been highlighted in green.

28              For purposes of allocating fees to each individual Defaulting Defendant,

1    the total in Category 1 has been divided by 22 to reflect fees incurred per
2    defendant.

3    b.  Category 2:  Entries that relate to Finnegan's work on LG's claims
4        against Shenzhen ZL Times Technology Co., Shenzhen Powerfire
5        Technology Co. Ltd., Shenzhen Newsinte Electronics Co. Ltd., and
6        Shenzhen Leisen Technology Co., Ltd. (the "Shenzhen Defendants"),
7        *e.g.*, LG's ex parte application for an order to show cause (Dkts. 19, 20)
8        and LG's response to the Court's request for additional briefing on this
9        matter (Dkt. 37).  These entries have been highlighted in pink.  For
10       purposes of allocating fees to each individual Shenzhen Defendant, the
11       total in Category 2 has been divided by 4 to reflect fees incurred per
12       defendant.

13   c.  Category 3:  Entries that relate to Finnegan's work on LG's claims
14       against the Defaulting Defendants, *e.g.*, LG's motion for default
15       judgment.  These entries have been highlighted in blue.  For purposes of
16       allocating fees to each individual Defaulting Defendant, the total in
17       Category 3 has been divided by 17 to reflect fees incurred per defendant.

18   d.  Category 4:  Entries that relate to Finnegan's work on LG's claims
19       against Yoon Hee Park and Herman Wheeler, Inc., *e.g.* service efforts.
20       These entries have been highlighted in red and, where possible, allocated
21       to the appropriate defendant.  The total for the remaining entries in
22       Category 4 has been divided by 2 to reflect fees incurred per defendant.

23   21.  Based on my experience in this case and others, I believe the above
24   apportionment is reasonable under the circumstances of this case and results in a
25   conservative calculation of LG's attorneys' fees and costs.

26   22.  After making the above apportionment, my office created charts
27   summarizing (1) the number of hours being claimed in each category by date, (2) the
28   number of hours being claimed in each category by biller, and (3) the fees apportioned

7

1  to each Defaulting Defendant.  The hourly rates in these charts have been adjusted to
2  reflect the amounts Finnegan actually invoiced per its fee agreement with LG.  These
3  charts are attached as Exhibits 3-5.

4      23.    In addition to Finnegan, LG was also represented in this matter by local
5  counsel, Wright, L'Estrange & Ergastolo.  Although this firm played a unique,
6  important role and billed reasonable fees for work related to this action, LG has
7  voluntarily excluded those amounts from its fee request.  LG has also voluntarily
8  excluded all fees and costs incurred after the February 2, 2017 default judgment
9  hearing, including fees associated with collecting the default judgments and preparing
10 this motion.

11     I declare under penalty of perjury of the laws of the United States that the
12 foregoing is true and correct pursuant to 28 U.S.C. § 1746.  This declaration was
13 executed on March 8, 2017 in Washington, D.C.



_____

Mark Sommers

TABLE OF CONTENTS
EXHIBITS TO THE DECLARATION OF MARK SOMMERS

| Exhibit | Description | Page |
|---------|-------------|------|
| 1 | Laffey Matrix | 001 |
| 2 | Billing statements | 003 |
| 3 | Hours per category, sorted by date | 084 |
| 4 | Hours per category, sorted by biller | 096 |
| 5 | Attorneys' fees per defendant | 135 |