# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HUANG XIAOWEN DBA TOP-UUSHOP, et al., <br><br> Defendants. | Case No.: 16-CV-1162 JLS (NLS) <br><br> **ORDER GRANTING MOTION FOR ATTORNEYS' FEES** <br><br> (ECF No. 136) |

Presently before the Court are Plaintiffs LG Corporation's, LG Electronics, Inc.'s, and LG Electronics Mobilecomm U.S.A., Inc.'s (collectively, "LG") Motion for Attorneys' Fees ("Fee Mot.," ECF No. 136), as well as their Supplemental Memorandum in Support of Their Motion for Attorneys' Fees, ("Fee Mot. Suppl. Mem.," ECF No. 147). The Court vacated the hearing on the motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 144.) After considering LG's arguments and the law, the Court **GRANTS** LG's Motion for Attorneys' Fees.

## BACKGROUND

On February 7, 2017, the Court granted LG's Motion for Default Judgment against several Defendants (collectively, "Defaulting Defendants"). ("Amended D.J. Order," ECF No. 127.) The Court also awarded Plaintiffs reasonable attorneys' fees and costs, and

invited LG to submit evidence of their attorneys' fees. (*Id.* at 25.[1]) LG timely filed their Motion for Attorneys' Fees, which the Court now considers.

**LEGAL STANDARD**

The Lanham Act provides that in "exceptional cases" the court "may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).[2] "To determine what fee should be awarded, the court must first determine the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). There is a "strong presumption" that the lodestar represents the reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "Next, in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975) (*Kerr*), *cert. denied*, 425 U.S. 951, 96 S. Ct. 1726, 48 L.Ed.2d 195 (1976), that have not been subsumed in the lodestar calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).[3] "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

[2] The Court has already determined that this case is exceptional as applied to the Defaulting Defendants. (*See* Amended D.J. Order 24–25.)

[3] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See Intel Corp.*, 6 F.3d at 622.

experience of counsel, the quality of representation, and the results obtained from the litigation." *Id.*

## ANALYSIS

LG seek a total of $383,134.35[4] in attorneys' fees apportioned per Defaulting Defendant. The Court will now consider the reasonableness of the hourly rates and the hours expended.

### I. Reasonableness of Rate

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The relevant community is that in which the district court sits." *Weeks v. Kellogg Co.*, 2013 WL 6531177, No. CV 0908102(MMM) (RZx), at *32 (C.D. Cal. Nov. 23, 2013) (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995)). "In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015).

The billing rates for Finnegan attorneys and summer associates working on this case ranged from $130 to $890, depending on the individual's experience. (Decl. of Mark Sommers in Supp. of Pls.' Mot. for Att'ys' Fees ("Sommers Decl.") ¶ 3, ECF No. 136-2.) Mr. Sommers, the lead counsel for LG since the inception of this case, was the only attorney charging $850 to $890 per hour, (*id.* ¶¶ 2–3), and LG further notes that Finnegan partners billed an average of $695 per hour, (Fee Mot. Suppl. Mem. 3). The billing rate for

---

[4] LG originally sought $405,443.69 in attorneys' fees. (*See generally* Fee Mot.) However, LG is willing to reduce the hourly rates of their paralegal work, which shaves $22,309.34 off of the original request. (Fee Mot. Suppl. Mem. 8.)

Finnegan paralegals ranged from $210 to $350, depending on the individual's level of experience and responsibilities. (*Id.* ¶ 12.) In support of these rates LG cites market reports detailing the prevailing rates for intellectual property attorneys in San Diego and cases from this district discussing and finding reasonable similar rates. For the reasons outlined below, this evidence persuades the Court that these hourly rates are reasonable. *See United Steelworkers*, 896 F.2d at 407 ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

The Court finds these rates reasonable for a number of reasons. For one, Finnegan is an international intellectual property firm with numerous accolades for its intellectual property work. (Sommers Decl. ¶ 17 (collecting awards).) In addition, courts recognize that intellectual property work requires specialized knowledge. *See, e.g.*, *Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014). Moreover, LG obtained favorable results in this case, including a temporary restraining order, preliminary and permanent injunctive relief, and statutory damages of over $168,000,000 spread out over the Defaulting Defendants. (*See generally* Amended D.J. Order.)

Furthermore, Finnegan's hourly rates are in line with other cases in this district approving similar fee requests by peer law firms. *See, e.g.*, *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC WVG, 2014 WL 6851612, at *5 (S.D. Cal. Dec. 3, 2014) (finding rates reasonable where plaintiffs sought "an hourly rate of between $170 per hour and $895 per hour depending on the particular attorney or paralegal" for work by a "multi-state/national law firm"). As for partner billing rates, Finnegan's rates appear to be within the median range of billing rates in 2015 for intellectual property suits in San Diego. *See Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15CV1879-BEN (BLM), 2017 WL 2212029, at *3 (S.D. Cal. May 18, 2017) (citing a publication noting that the 2015 median billing rates for intellectual property partners in San Diego was between $585.04 and $727.50). Although Mr. Sommers' rate of $783 is

higher than this range, the Court finds that it is nevertheless reasonable because it falls within the range of rates charged by intellectual property partners of similar experience (which is $331–$870), (Fee Mot. Suppl. Mem. 3 (citing AIPLA 2015 Report of the Economic Survey ("AIPLA Survey") I-25)), and is less than the lead counsel rate previously approved in *Zest*. *See Zest*, 2014 WL 6851612, at *5 (finding reasonable an hourly rate of $850–$895 for the plaintiffs' lead counsel). Thus, the Court finds reasonable the rates charged by Finnegan partners in this case.

The associate billing rates are also reasonable. Finnegan associates billed between $370 and $488, for an average of $415. (Fee Mot. Suppl. Reply 4.) This average is within $2 of the median billing rate in 2015 for intellectual property associates in San Diego, (i*d.* (citing *Flowrider Surf*, 2017 WL 2212029, at *3 (noting that the average was $413.80)), and in some cases is lower than the rates approved by other courts in this district, (*id.* at 4–5 (citing *Zest*, 2014 WL 6851612, at *5–6)). LG notes that only one of its associate's rate of $444 falls outside the AIPLA Survey range. (*Id.* at 5.) The Court nevertheless finds this departure reasonable given that it is a small departure and that the *Zest* Court found reasonable a $565 hourly rate for an associate with similar experience. *Zest*, 2014 WL 6851612, at *5. Thus, the Court finds reasonable the rates charged by the Finnegan associates in this case. (*See also* Fee Mot. Suppl. Mem. 5–6 (providing a chart that lists each attorney's experience level and billing rate (accounting for LG's fee agreement) and compares these rates to the AIPLA Survey, the 2016 Real Rate Report, and rates previously found reasonable in this district).)

Finally, the Court finds reasonable the paralegal rates. Here, Finnegan paralegals billed between $184.80 and $308 per hour, accounting for LG's fee agreement. (Fee Mot. Suppl. Mem. 7.) However, LG notes that in this District paralegal rates between $125 and $175 are generally approved and have been approved as high as $290. (*Id.* (citing *In re Maxwell Techs., Inc., Derivative Litig.*, No. 13-cv-966-BEN (RBB), 2015 WL 12791166, at *5 (S.D. Cal. July 13, 2015) (awarding $225 paralegal rate to paralegals with "significant experience"); *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-cv-01848-H

(POR), 2009 WL 160235, at *4 (S.D. Cal. Jan. 20, 2009) (concluding that $90 to $210 per hour was reasonable for paralegal work in a copyright infringement action); *Flowrider Surf*, 2017 WL 2212029, at *3 (awarding paralegal fees of $150 per hour in a patent infringement case)).) Given this authority, LG is willing to reduce the hourly rate for most of their paralegals to $175 per hour. (*Id.*) The Court finds such a reduction reasonable, particularly because Finnegan's paralegals have significant experience in their respective positions, in most cases over ten years. (*Id.* (citing Sommers Decl., ¶¶ 12–16).) Two paralegals have a rate of $225 per hour, which the Court finds reasonable given that they both have been paralegals for over twenty years. (*Id.* (citing Sommers Decl. ¶¶ 12, 15)); *see also Maxwell Techs.*, 2015 WL 12791166, at *5 (approving a $225 rate for paralegals with "significant experience"). Thus, the Court finds reasonable the rates charged by Finnegan paralegals in this case, and will adjust the final award accordingly. (*Id.* at 8 (providing downward calculations based on paralegal rate reduction).)

## II. Hours Reasonably Spent

"The moving party bears the burden of documenting the appropriate hours spent in the litigation and submitting evidence in support of the hours worked." *Zest*, 2014 WL 6851612, at *6 (citing *Hensley*, 461 U.S. at 433); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (noting that a party satisfies its burden by listing the hours spent and "identifying the general subject matter of [the] time expenditures"). "Even if the opposing party has not objected to the time billed, the district court 'may not uncritically accept a fee request,' but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Zest*, 2014 WL 6851612, at *7 (citing *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002)); *see also McGrath v. Cty. of Nev.*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting that a court may not adopt the prevailing party's representations without conducting an independent review of the fee application).

The Court finds the hours spent reasonable for two reasons. First, LG provides detailed monthly billing statements from counsel, as well as various charts summarizing

those statements. (Fee Mot. 3 (citing Sommers Decl. ¶ 19, Exs. 2–5).) These statements reflect the date, amount, and nature of work LG's attorney's performed. (*Id.*) These fees represent over a year of work on this case, from initiation to obtaining and enforcing a temporary restraining and show cause order through default judgment. (*Id.* at 4.) After an independent review of these billing statements, the Court finds that they reasonably represent the hours spent in pertinent litigation against the Defaulting Defendants.

Second, LG reasonably apportioned their fees as to each Defendant. LG's calculation of the lodestar was complicated by the complex nature of this case, including the large number of defendants (22) and claims involved. To accurately apportion their fees, LG conducted a thorough analysis of their attorneys' billing statements, excluding billing entries for Defendants Doe 1, Phuong Nguyen, Lam Le, Bestcom Wireless Network, Inc., and N&K Trading, Inc. (collectively, the "Non-Defaulting Defendants"). (*Id.* (citing Sommers Decl. ¶ 20).) Out of an abundance of caution, LG further excluded any billing entries that encompassed work relating to the Defaulting Defendants and the Non-Defaulting Defendants (i.e., LG does not seek fees for any overlapping work). (*Id.*) And LG excluded all travel and correspondence costs from their calculation. (*Id.*) LG categorized the remaining billing entries as follows:

- Category 1: Entries that relate to Finnegan's work on LG's claims against all defendants, *e.g.*, investigatory and preparatory work for the complaint, work relating to LG's motion for a temporary restraining order, service efforts, etc. For purposes of allocating fees to each individual Defaulting Defendant, the total in Category 1 has been divided by 22 to reflect fees incurred per defendant.

- Category 2: Entries that relate to Finnegan's work on LG's claims against Shenzhen ZL Times Technology Co., Shenzhen Powerfire Technology Co. Ltd., Shenzhen Newsinte Electronics Co. Ltd., and Shenzhen Leisen Technology Co., Ltd. (the "Shenzhen Defendants"), e.g., LG's ex parte application for an order to show cause (Dkts. 19, 20) and LG's response to the Court's request for additional briefing on this matter (Dkt. 37). For purposes of allocating fees to each individual

Shenzhen Defendant, the total in Category 2 has been divided by 4 to reflect fees incurred per defendant.

- Category 3: Entries that relate to Finnegan's work on LG's claims against the Defaulting Defendants, e.g., LG's motion for default judgment. For purposes of allocating fees to each individual Defaulting Defendant, the total in Category 3 has been divided by 17 to reflect fees incurred per defendant.

- Category 4: Entries that relate to Finnegan's work on LG's claims against Yoon Hee Park and Herman Wheeler, Inc., e.g. service efforts. Where possible, these entries were allocated to the appropriate defendant. The total for the remaining entries in Category 4 has been divided by 2 to reflect fees incurred per defendant.

(*Id.*)

LG then added the amounts from each category per Defaulting Defendant to arrive at the following individualized totals:[5]

| Defendant | Attorney's Fees Claimed |
|---|---|
| Xiaowen | $21,383.54 |
| Enjoy | $21,383.54 |
| Hosphone Electronic | $21,383.54 |
| Shenzhen Bingos | $21,383.54 |
| Shenzhen ZL | $31,161.66 |
| Winding Electronic | $21,383.54 |
| Shenzhen Powerfire | $31,161.66 |
| Newkingser | $21,383.54 |

---

[5] The Court notes that these totals are necessarily adjusted based on LG's decision to lower their hourly rates for Finnegan's paralegal work; this chart was submitted prior to LG making their decision.

8

16-CV-1162 JLS (NLS)

| Little Link       | $21,383.54   |
| ----------------- | ------------ |
| King Flash        | $21,383.54   |
| Shenzhen Newsinte | $31,161.66   |
| Smart Link        | $21,383.54   |
| Ruilin Tech       | $21,383.54   |
| Shenzhen Leisen   | $31,161.66   |
| Herman Wheeler    | $22,844.96   |
| Lu                | $31,161.66   |
| Park              | $22,733.15   |
| **TOTAL:**        | **$405,443.69** |

(*Id.* at 5–6.) Given the foregoing, the Court finds that LG has met their burden of documenting the appropriate hours spent in this case. In addition, The Court finds that LG have made "a good faith effort to exclude from [their] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Accordingly, the Court concludes that LG's requested attorneys' fees are reasonable and thus **GRANTS** LG's Motion for Attorneys' Fees.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** LG's Motion for Attorneys' Fees (ECF No. 136) and thus **AWARDS** LG $383,134.35 in attorneys' fees apportioned per Defendant pursuant to LG's calculations, (Fee Mot. 5–6), and accounting for any variances in these calculations based on their decision to reduce the hourly rates of their paralegal work, (Fee Mot. Suppl. Mem. 8). Additionally, because this appears to be the final matter

/ / /

/ / /

/ / /

/ / /

in this case, the Court **ORDERS** LG to show cause why this case should not be closed <u>on or before seven days from the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated: September 5, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge